**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JASON ROBERTS,

    Plaintiff,

    v.

NRA GROUP, LLC d/b/a NATIONAL RECOVERY AGENCY,

    Defendant.

CIVIL ACTION NO. 3:11-2029

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are Defendant NRA Group, LLC's ("NRA") Motion for Summary Judgment (Doc. 11) and Plaintiff Jason Roberts's Cross-Motion for Summary Judgment. (Doc. 16.) The issue in this Fair Debt Collection Practices Act case is whether the debt owed by Plaintiff was in default at the time it was referred to Defendant for collection. Because Defendant obtained Plaintiff's account when it was not in default, Defendant's motion will be granted and Plaintiff's motion will be denied.

## I. Background

In his Complaint, Plaintiff alleges that on October 18, 2010, Defendant sent him a letter in its efforts to recover on an account owed by Plaintiff to Moses Taylor Hospital ("the hospital"). According to the hospital's corporate designee, Tracy Zabrenski, the debt owed by Plaintiff to the hospital was due on August 27, 2010. (*Zabrenski Dep*., 54:4-6.) However, as of August 28, 2010, Plaintiff had not made a payment on the debt. (*Id*. at 54:7-10.) As such, on September 17, 2010, the hospital placed Plaintiff's account with NRA as an "early out." (*Id*. at 127:18-20.)

Ms. Zabrenski testified that an "early out agency" acts as an extension of the hospital's business office. (*Id*. at 18:2-8.) These agencies represent themselves as being affiliated with the hospital when attempting to collect unpaid debts. (*Id*. at 18:11-19.)

Typically, an "early out agency" will attempt to collect the debt for 120 to 150 days, and if payment is not received in that time period, then the account will be turned back over to the hospital's business office. (*Id.*) Once the account is returned to the hospital from the "early out agency," the account will go for "bad debt collections" and "the accounts are then written off the active accounts receivable, and they are moved to bad debt and are recorded in the cost report differently because they are considered no longer deemed collectible." (*Id.* at 19:3-6.) Thus, the hospital uses collection agencies in two capacities- for "early out" recovery and for bad debt collections. (*Id.* at 18:2-24.)

As to Plaintiff's account, Ms. Zabrenski testified that Defendant was unsuccessful in getting a response or payment from Plaintiff. (*Id.* at 132:5-7.) As a result, the account was returned to the hospital on or about December 17, 2010. (*Id.* at 132:1-19.) Thereafter, on March 31, 2011, Plaintiff's debt went into default, which Ms. Zabrenski referred to as bad debt. (*Id.* at 41:23-42:16.)

Based on these events, Plaintiff commenced this action on September 30, 2011 alleging Defendant's efforts to collect his debt violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*, ("FDCPA"). (Doc. 1, Ex. 2.) On November 1, 2011, Defendant removed the action from the Court of Common Pleas of Lackawanna County, Pennsylvania to this Court. (Doc. 1.) On November 8, 2011, Defendant filed an Answer with Affirmative Defenses. (Doc. 4.) On March 28, 2012, Defendant filed a Motion for Summary Judgment, (Doc. 11), and on May 11, 2012, Plaintiff filed a Cross-Motion for Summary Judgment. (Doc. 16.) As identified in Plaintiff's cross-motion, the parties have stipulated that if the Court determines the debt to have been in default at the time it was referred to Defendant, then Plaintiff is entitled to statutory damages and a reasonable attorney's fee as determined by the Court. (Doc. 18, Ex. A.) Both motions have now been fully briefed and are ripe for disposition.

**II. Legal Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727 (2d ed.1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"When considering whether there exist genuine issues of material fact, the court is

required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed.R.Civ.P. 56(e)).  "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. Discussion

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  "The FDCPA's provisions generally apply only to 'debt collectors.'" *Pollice v. Nat'l Tax Funding, L.P.*, 225

F.3d 379, 403 (3d Cir. 2000) (citing *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000)). And, "[c]reditors- as opposed to 'debt collectors'- generally are not subject to the FDCPA." *Id*. (citing *Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998)).

For the purposes of the FDCPA, a "debt collector" is one who

> uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6). Nevertheless, the FDCPA contains a number of exceptions to this definition. *See id*. In particular, excluded from the definition of a "debt collector" is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) *concerns a debt which was not <u>in default</u> at the time it was obtained by such person*." *Id*. at § 1692(a)(6)(F) (emphasis added). "Thus, under § 1692(a)(6)(F)(iii), the classification of debt collector depends upon the status of a debt, rather than the type of collection activities used." *Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86 (2d Cir. 2003). "Unfortunately, the FDCPA does not define so key a term as 'default.'" *Id*.

Here, the issue is whether Plaintiff's debt was in default at the time it was referred to Defendant for collection. Defendant argues that the intent of the creditor governs whether a debt is in default. Conversely, Plaintiff asserts that the term default should be interpreted by its dictionary definition- meaning that the debt was in default as of August 28, 2010.

Defendant contends that it is entitled to judgment as a matter of law because

Plaintiff's account was not in default when it was placed with Defendant pursuant to *Prince v. NCO Fin. Servs., Inc.*, 346 F. Supp. 2d 744 (E.D. Pa. 2004). In *Prince*, the plaintiff owed a debt to Capital One Bank. *See id*. at 745. Capital One's standard customer agreement with the plaintiff provided that the bank "may consider you to be in default under this Agreement" in certain identified circumstances. *Id*. Capital One entered into an Account Servicing Agreement with NCO for collection of Capital One accounts. *See id*. at 746. The Accounting Servicing Agreement provided that accounts referred to NCO were not in default at the time of the referral. *See id*. Thereafter, NCO sent the plaintiff a letter regarding the collection of an account she had with Capital One. *See id*. at 746. The plaintiff subsequently commenced an action against NCO alleging that its collection efforts violated the FDCPA. *See id*. at 745. NCO ultimately filed a motion for summary judgment asserting that the debt was not in default when it was transferred to NCO. *See id*. at 747.

> In granting NCO's motion for summary judgment, the district court reasoned:
>
> The FDCPA governs the collection of debts by third parties, and it does not govern the terms of a debt between the original debtor and creditor. The terms of a debt between a debtor and creditor are frequently governed by legislation or contract provisions, and the governing terms often contain a provision regarding when the account is considered "in default." One reasonable interpretation of the FDCPA is that the drafters intended for the question of default to be determined on a case-by-case basis by applying the specific definition of "default" that governed the underlying debt.

*Id*. After reviewing the terms of Capital One's standard customer agreement, the district court found that "NCO made an initial showing that there is no genuine issue of material fact as to the status of the account by providing Capital One's representation to NCO that the account was not in default." *Id*. at 748. Thus, "[t]his evidence of Capital One's state of mind with regard to whether the debt was in default is a satisfactory initial showing that Capital One did not consider Prince's account to be 'in default.'" *Id*. at 749.

The district court next considered whether the plaintiff made a sufficient showing to establish the existence of every element essential to her case. *See id*. Based on the written

6

guidelines provided by Capital One, the district court stated that the guidelines could be used to determine whether an account was in default so long as "the guidelines are applied consistently" and "they are designed for administering accounts, rather than for circumventing the FDCPA." *Id*. at 750.  And, because the plaintiff failed to provide any "evidence to suggest that Capital One made representations to NCO or other parties that defaulted accounts were not in default," the plaintiff failed to make a showing sufficient to demonstrate that there was a genuine issue of fact as to whether the plaintiff's account was in default. *Id*.  Accordingly, NCO's motion for summary judgment was granted. *See id*. at 751.

Recently, the District Court for the Eastern District of Pennsylvania reiterated that whether a debt is in default under the FDCPA is a determination to be made by the court "on a case-by-case basis." *Alamo v. ABC Fin. Servs., Inc.*, No. 09-5686, 2011 WL 221766, at *5 (E.D. Pa. Jan. 20, 2011).  And, "[b]ecause no statutory definition exists, several district courts have addressed the issue of what constitutes a default under the FDCPA by looking to the contractual provisions governing the underlying debt between the consumer and the creditor." *Id*. (citing *Prince*, 346 F. Supp. 2d at 747).

In his cross-motion, Plaintiff asserts that *Prince* does not apply to the instant case because the hospital did not have an agreement with Plaintiff that defined when a debt was in default.  And, without a contract to glean the hospital's state of mind, Plaintiff argues that *Prince* is inapplicable to the instant case.  Instead, Plaintiff urges the Court to adopt the dictionary definition of default applied in *Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024 (S.D. Ind. 2007).

In *Magee*, the plaintiff had an account that became delinquent, and, as a result, was referred by KeyBank to AllianceOne for collection. *See id*. at 1025.  Thereafter, AllianceOne sent the plaintiff a letter in an attempt to collect the debt. *Id*. at 1026.

The plaintiff subsequently commenced an action against AllianceOne for violation of the FDCPA. *See id*. at 1027. AllianceOne eventually filed a motion for summary judgment arguing that it was not a "debt collector" under the FDCPA because the plaintiff's account was not in default when it was referred to AllianceOne pursuant to the terms of the parties' agreement that stated that the account would not be in default unless KeyBank declared it to be so in writing. *See id*. The district court disagreed with AllianceOne's position and specifically rejected the *Prince* court's reasoning. *See id*. According to the district court, the purpose of the FDCPA "would be contravened if a creditor were unilaterally able to determine when and if an account was in default for FDCPA purposes and therefore whether the provisions of the FDCPA applied to the debt collections activities of the collection agency it hires." *Id*. at 1027-28. As such, the *Magee* court concluded that "[r]eading the word 'default' as having its dictionary definition would further this intention, and would also have the benefit of consistency- creditors, debtors, collection agencies, and courts would know whether a debt was in default for FDCPA purposes without referring to and interpreting the underlying agreement." *Id*. at 1028.[1] Based on that reasoning, the district court denied AllianceOne's motion for summary judgment. *Id*. at 1029.

---

[1] Plaintiff asserts that the dictionary definition of default is binding on this Court because it has been adopted by the Third Circuit. *See FTC v. Check Investors, Inc.*, 502 F3d 159 (3d Cir. 2007). In *Check Investors*, the defendant argued that a check, as an unconditional promise to pay, could never be in default. *See id*. at 172 n.12. The Third Circuit disagreed with this argument and stated that "'default' is 'the omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due.'" *Id*. Since the checks had already been dishonored when they were purchased by the defendant, the Third Circuit found that the checks were in default when purchased. *Id*. Despite this formulation of the term "default" in the FDCPA, the district court in *Alamo* relied on the *Prince* court's reasoning to determine whether a debt was in default and not the dictionary definition referenced in *Check Investors*. *See Alamo*, 2011 WL 221766 at *5; see also De Dios v. Int'l Realty & Inv.*, 641 F.3d 1071, 1074 (9th Cir. 2011) ("courts interpreting § 1692a(6)(F)(iii) look to any underlying contracts and applicable law governing the debt at issue").

Defendant asserts that the *Magee* court erred in adopting the dictionary definition of default. Specifically, Defendant argues that the court failed to appreciate that a creditor is not subject to the FDCPA and would therefore have no incentive to try to circumvent the Act. Moreover, Defendant contends that the *Magee* court ignored the mindset of the creditor which was set forth in the terms of the applicable credit agreement. While Defendant acknowledges that there is no agreement between Plaintiff and the hospital to determine the creditor's intent in this case, Defendant asserts that the creditor's actual testimony demonstrates that the account was not in default when it was referred to Defendant for collection and that the account was not in default until March 31, 2011. *(Zabrenski Dep.*, 41:23-42:16.)

Here, Defendant's motion for summary judgment will be granted because no material facts are in dispute that Plaintiff's account was not in default when it was referred to Defendant for collection. Initially, Plaintiff's position that the Court should adopt the dictionary definition of "default" is unconvincing.[2] Instead, "[i]n applying the FDCPA, courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt go into default." *See Alibrandi*, 333 F.3d at 86. And while the judicial decisions and regulations cited by the *Alibrandi* court reflect inconsistent periods of time preceding default, "they all agree that default does not occur until well after a debt becomes outstanding." *Id*. at 87

---

[2] Plaintiff's argument that the definition of default was essential to the *Check Investors* court's holding, which was set forth in a footnote without any analysis of contrary authority rejecting the dictionary definition, is unavailing. In *Check Investors*, the plaintiff's check had already been dishonored (i.e. already in default by dishonor) and the court indicated that there was no arguable dispute that the checks were in default at the time of purchase. *See Check Investors*, 502 F.3d at 172 & n.12. This case, however, presents a different factual scenario where the creditor expressly deemed the account not in default when it was placed with the servicer.

(citations omitted).  As set forth by the Second Circuit:

> We conclude that the FDCPA's broad, pro-debtor objectives would not be served if we adopted Alibrandi's argument that default occurs immediately after payment becomes due. Alibrandi's position involves a curious role reversal-a debtor arguing that his debt was in default at the earliest possible time-and has the paradoxical effect of immediately exposing debtors to the sort of adverse measures, such as acceleration, repossession, increased interest rates, and negative reports to credit bureaus, from which the Act intended to afford debtors a measure of protection. We believe it ill-advised to adopt an approach that precipitously visits these consequences upon debtors.

*Id*.

Accordingly, as articulated by the *Prince* court, whether Plaintiff's account was in default will be determined by looking at the "state of mind" of the creditor to see whether the creditor considered the debt to be in default. *Prince*, 346 F. Supp. 2d at 749.

In this case, Defendant has satisfied its initial burden of showing that there is no material fact in dispute and that it is entitled to judgment as a matter of law.  In particular, Defendant has presented evidence through the testimony of the hospital's designee that: (1) Plaintiff's account came due on August 27, 2010, (*Zabrenski Dep.*, 54:4-6); (2) the account was referred to Defendant on or about September 17, 2010, (*Id*. at 127:18-20); (3) the account was not deemed in default by the hospital as of October 18, 2010, (*Id*. at 144:15-17); and (4) the account was deemed as bad debt on March 31, 2011. (*Id*. 41:23-42:16.)  Consistent with the authority relied on by *Alibrandi*, Plaintiff's debt had only been past due for approximately twenty-one (21) days when it was referred from the hospital to Defendant- indicating that the debt was not yet in default.  Thus, based on this evidence, Defendant has made an initial showing that the hospital did not consider Plaintiff's account to be in default when it was referred to Defendant. *See Prince*, 346 F. Supp. 2d at 749.  To defeat summary judgment, therefore, Plaintiff must "'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id*. (quoting *Celotex Corp.*, 477 U.S. at 322.)

Plaintiff has failed to provide any evidence in support of his position that the account

was in default when it was placed with Defendant. While Plaintiff asserts that Ms. Zabrenski "was obviously well-coached for the deposition and was sympathetic to the Defendant's cause" and her testimony "appears to simply be an effort to assist the Defendant," "'to survive summary judgment, a party must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.'" *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 436 (3d Cir. 2007) (quoting *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)). Apart from Plaintiff's suspicions, he has failed to provide any evidence that the hospital administers accounts inconsistently or for the purpose of circumventing the FDCPA. As such, even viewing the evidence in the light most favorable to Plaintiff, he has failed to make a showing sufficient to demonstrate a genuine issue of fact as to whether his account was in default when it was referred to Defendant. As such, Defendant's motion will be granted.

## IV. Conclusion

For the above stated reasons, Defendant's motion for summary judgment will be granted and Plaintiff's cross-motion for summary judgment will be denied.

An appropriate order follows.

| | |
|---|---|
| August 10, 2012 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |